CARRIE Z. CORBIN *vs.* EUSEBE VIAU.
WILLIAM A. CORBIN *vs.* SAME.

MARCH 28, 1952.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

CONDON, J. These actions of trespass on the case for negligence were tried together in the superior court and resulted in verdicts for the defendant. Thereafter each plaintiff filed a motion for a new trial which was denied by the trial justice. The cases are here on plaintiffs' bills of exceptions containing identical exceptions to such denials and to certain rulings of the trial justice on the admission of evidence.

On October 8, 1947 shortly after four o'clock in the afternoon plaintiffs were injured in a collision between a private ambulance in which they were passengers and defendant's Hudson sedan at the intersection of Putnam Pike and Cedar Swamp Road in the town of Smithfield. They claimed the operators of both vehicles were negligent and brought separate actions against the defendant and also against the owners and operator of the ambulance. However, only these actions against the defendant proceeded to trial. The others were settled for a consideration in return for a written release.

At the trial in the superior court the following eyewitnesses of the accident were called by, and testified for, the plaintiffs: the operator of the ambulance, his two helpers who were on the front seat beside him, plaintiff William A. Corbin who was sitting in the rear of the ambulance beside his wife, plaintiff Carrie Z. Corbin, who was lying on a stretcher in a coma, and plaintiffs' son William A. Corbin, Jr. who was following the ambulance at a distance of about 100 yards more or less. No eyewitnesses were available to the defendant. He was forced to rely upon the testimony of two state policemen who investigated the accident, certain photographs of the scene of the collision

and of the two vehicles taken immediately thereafter, and also upon certain statements made by William A. Corbin, Jr. to investigators a few days after the accident. The defendant, in order to discredit the witness, claimed that such statements were inconsistent with his testimony at the trial.

According to the evidence Putnam Pike at its intersection with Cedar Swamp Road is 40 feet wide and is divided into four driving lanes each 10 feet wide. Cedar Swamp Road is 20 feet wide and is divided into two driving lanes by a white line painted down the center of the road. The Pike runs generally east and west and the Road runs generally north and south. Suspended over the center of the intersection of the two highways is an automatic traffic light which changes from green to yellow to red, to indicate respectively a "go," "caution," and "stop" signal for traffic on each highway, and back to green again. At the time of the accident the light was functioning properly. The ambulance was proceeding easterly in the second or passing lane on its right side of the Pike. The defendant's sedan was proceeding southerly on its right side of the Road. Both vehicles collided in the intersection when at least the front of the sedan was beyond, that is, south of the middle line of the Pike. The front of the ambulance crashed into the right side of the sedan at or near its front door. The impact was so great that the sedan overturned and landed near a tree at the southeast corner of the intersection. The ambulance veered to the right as it broke loose from the sedan and stopped with the rear still on the Pike while its front was pointed more or less toward Fountain Spring Road, which is to the south of the Pike and is in effect a continuation of Cedar Swamp Road. In fact both roads are officially numbered R. I. Route 5. The Pike is U. S. Route 44.

As a result of the collision the driver of the sedan and his wife and a son who were riding with him were killed. Another son who was about seven years of age was injured.

At the time of the trial he was residing with a brother in Switzerland. It was not possible before the occupants of the sedan died to obtain statements from them as to how the accident happened from their point of view. All that could be learned was that the driver who was operating the sedan with the consent of defendant, who was his father-in-law, had left Woonsocket that afternoon to go to the state airport at Hillsgrove to meet another son who was due there by plane from New York. Aside from further testimony that the sedan had been recently inspected and was in very good operating condition defendant could offer no testimony as to how the accident happened.

At the conclusion of plaintiffs' evidence defendant moved for a nonsuit on the ground that there was no evidence of negligence on the part of the driver of the sedan. The trial justice denied the motion. On the same ground defendant moved for a directed verdict at the conclusion of all the evidence and that motion was also denied. The trial justice apparently felt that there was evidence of negligence on the part of the driver of the sedan and that there was also evidence on defendant's side which tended to weaken the testimony of some of plaintiffs' witnesses upon which such negligence was predicated. In the circumstances he decided that on that point there was clearly a question for the jury. However, when he came to consider each plaintiff's motion for a new trial and was free to weigh the evidence himself he concluded that the jury had rightly found that defendant, through his servant, the driver of the sedan, was not guilty of negligence. He pointed out in his decision that that was really the only question before the jury since there was no evidence before them on which they could reasonably have found that either plaintiff was guilty of contributory negligence.

We agree with the trial justice on the last point and with that in mind we have carefully examined the transcript and exhibits solely to determine whether his approval of

the jury's verdict, based as it must have been on a finding that plaintiffs failed to prove by a fair preponderance of the evidence that defendant was negligent, was clearly wrong. All of plaintiffs' witnesses testified that the siren on the ambulance was continuously blowing and the red light thereon continuously flashing for several hundred feet before the ambulance reached the intersection and up to the time of the collision. We do not find that such testimony was contradicted or substantially impeached. There was also testimony that one driving south on Cedar Swamp Road could glance across a slight elevation at the northwest corner and see a car proceeding easterly on its right side of the Pike 200 feet away. The witness who so testified also denied on cross-examination that the slight elevation above referred to obscured the view of the Pike entirely. This testimony in our opinion is substantially corroborated by one of defendant's exhibits which gives a photographic view of the intersection looking westerly on the Pike. The same witness also estimated that a person on the Pike 125 feet west of the intersection could see to the left, that is, north on Cedar Swamp Road, more than 150 feet. We do not find that such testimony was either contradicted or impeached.

It is not denied that the operator of the ambulance drove into the intersection in deliberate disregard of the red light. It is also conceded that as defendant's driver approached the intersection the light on Cedar Swamp Road was green. Apparently he thereby assumed that he had the absolute right of way and proceeded into the intersection without slackening his speed or having his car under such control that he could stop it if the driver of the ambulance did not concede him such right of way. Several of plaintiffs' witnesses testified that they observed the sedan coming out of Cedar Swamp Road and estimated it was traveling at various rates of speed, all in excess of the legal limit at that point. One witness testified that it was traveling about

50 miles per hour and that it "jumped right out into the main road." Another witness testified that it "bounded out * * * like a jackrabbit going across the road."

None of that testimony was contradicted. Defendant, however, sought to discredit witness William A. Corbin, Jr. by showing that he made certain statements to investigators a few days after the accident which were inconsistent with some of his testimony. In our opinion the claimed inconsistencies did not directly relate to any of the above-mentioned testimony. But even if they had an indirect bearing upon it they were not of a character to overcome such testimony. In other words they were not such as to destroy the witness' credibility and thus vitiate his solemn statements under oath on the witness stand. And the trial justice in his decision denying plaintiffs' motions did not find that they should be given that effect.

After carefully considering and weighing all the evidence we are of the opinion that the great weight of it clearly preponderates in favor of plaintiffs' claim that the driver of defendant's sedan did not, in the circumstances, exercise due care when he drove his car at great speed into the intersection in the path of the visible oncoming ambulance. A reasonably prudent man would have observed the ambulance approaching the intersection and upon seeing its red light continuously flashing and hearing its siren continuously sounding would have assumed that it was going to proceed through the intersection regardless of the traffic signal, and he would have given it the right of way, especially since an ambulance is not legally bound to stop at a red light, or at least he would have slowed down and had his sedan under control so as to stop, if necessary, to avoid a collision. The fact that the driver of the ambulance in so acting may also have been guilty of negligence would not excuse the defendant at least from liability to the plaintiffs who, as we have seen, had no control over the operation of the ambulance.

We are not called upon here to determine which of the two drivers was the more negligent. All that we need to decide is that the driver of defendant's sedan was negligent and that such negligence was a concurring, proximate cause of the accident. From our examination of the transcript we are convinced that the great weight of the evidence supports such findings. The trial justice, therefore, erred in not granting plaintiffs' motions for a new trial. In view of that conclusion there is no necessity to consider any other exceptions.

The plaintiff's exception in each case to the denial of the motion for a new trial is sustained, and each case is remitted to the superior court for a new trial.

*Fergus J. McOsker,* for plaintiffs.

*Sherwood & Clifford, Sidney Clifford, Raymond E. Jordan,* for defendant.